**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DONALD GUARRIELLO and
VALERIE HOLLOWAY
on behalf of themselves and all other persons
similarly situated, known and unknown,

           Plaintiffs,

v.                                                                   No. 1:19-cv-01184-WJ-CG

YASHNA ASNANI and JANE DOE
ASNANI, a Married Couple,
RENU VERMA and JOHN DOE VERMA,
a Married Couple, CLASSIC CAFÉ
CUISINE, LLC, a New Mexico
Limited Liability Company;
BARRERAS ENTERPRISES, Inc.,
a New Mexico Corporation;
NEW MEXICO'S BEST DINER, LLC,
a New Mexico Limited Liability Company,

           Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS COMPLAINT AND COMPEL ARBITRATION

THIS MATTER comes before the Court on Defendants' Motion to dismiss the Complaint and compel arbitration, filed June 10, 2020 (**Doc. 36**) (the "Motion"). The Court held a hearing on the Motion on December 2, 2020. Doc. 60. Upon considering the parties' written and oral arguments, and the applicable law, the Court finds the Motion is not well-taken and is, therefore, DENIED.

### BACKGROUND

On December 18, 2019, Plaintiffs Donald Guarriello and Valerie Holloway filed a Class and Collective Action Complaint (the "Complaint") against Defendants, asserting various wage and hour claims under the Fair Labor Standards Act (the "FLSA") and New Mexico's Minimum

Wage Act ( the "NMMWA"). Doc. 1. Defendants filed this Motion on June 10, 2020, asking the Court to dismiss the Complaint and compel arbitration pursuant to the Federal Arbitration Act ("FAA"). Doc. 36. On July 28, 2020, Chief U.S. Magistrate Judge Carmen E. Garza granted the parties' joint motion to stay all pending discovery and other pretrial deadlines in this case.[1] Doc. 47.

This above-captioned case arises from Plaintiffs' time as servers at certain Denny's, Inc. restaurants located in New Mexico. These restaurant locations were owned and operated by Defendants Classic Café Cuisine, LLC ("CCC") and New Mexico's Best Diner ("NMB"), two New Mexico limited liability companies of which Defendants Asnani and Verma are members. Doc. 36 at 2. According to the Complaint, Defendant Barreras Enterprises, Inc. is also an owner and operator of these restaurants. Doc. 1 ¶¶ 49–51. Plaintiff Holloway worked at an NMB-owned restaurant from 2015 to 2018 and a CCC-owned restaurant from 2018 to 2019. Doc. 36 at 2; Doc. 1 ¶ 37. Plaintiff Guarriello worked at four CCC-owned restaurants from 2016 to 2019. Doc. 36 at 2; Doc. 1 ¶ 35.

NMB and CCC used an identical online process for onboarding employees. This process required Guarriello and Holloway to submit an employment application and agree to certain policies, terms, and provisions contained in an employee handbook (the "Employee Handbook"). Each employment application was attached as the last page of the Employee Handbook. Doc. 36

---

[1] The Court notes one basis of parties' request for a stay in this case is impaired ability to travel to New Mexico during the COVID-19 pandemic. Doc. 45 ¶3. In particular, New Mexico' 14-day quarantine requirement will make it impossible for Plaintiffs' counsel to attend depositions. As of December 14, 2020, this quarantine requirement is still in place and will likely remain in place until well after the Court issues its rulings on the other two pending motions. *See* Current Public Health Order & Executive Order on Out of State Travel https://www.newmexico.org/industry/rapid-response-covid-19/covid-19-impact-faq/ (listing criteria and requirements for individuals entering the State of New Mexico and providing a list of low-risk states of departure, updated weekly). The Court urges counsel to confer on how they would like to proceed with discovery under these conditions and raise their concerns and/or suggestions with Judge Garza when discovery resumes.

at 3. Defendants contend that Plaintiffs' submission of their respective employment applications created a set of identical arbitration agreements.

Defendant CCC's employment application (Ex. C) states, in relevant part:

As a result of this application, if I am hired for this (or any other position) with Classic Café Cuisine, LLC, I agree to the following:
. . .
I waive my right to sue Classic Café Cuisine, LLC, and any of its owners and officers and agree to submit to legally binding arbitration of any disputes that might arise as a result of my employment with Classic Café Cuisine, LLC.

Defendant NMB's employment application (Ex. D) states, in relevant part:

As a result of this application, if I am hired for this (or any other position) with New Mexico's Best Diner, LLC, I agree to the following:
. . .
I waive my right to sue New Mexico's Best Diner, LLC, and any of its owners and officers and agree to submit to legally binding arbitration of any disputes that might arise as a result of my employment with New Mexico's Best Diner, LLC.

Page 4 of the Employee Handbook contains the following provision (the "Modification Provision"):

The policies in this Employee Handbook are to be considered as guidelines.
New Mexico's Best Diner, LLC, at its option, may change, delete, suspend, or discontinue any part or parts of the policies in this Employee handbook [sic] at any time without prior notice as business, employment legislation, and economic conditions dictate.

Doc. 38, Ex. B.[2]

In resisting Defendants' Motion, Plaintiffs put forth the following arguments: (1) a valid arbitration agreement does not exist in this case; (2) even if a valid agreement exists, Defendants have denied they are within the coverage of the FAA; and (3) Defendants waived their arbitration defense. Doc. 38. Because the Court finds that, as a threshold matter, no valid arbitration agreement exists in this case, it will not address Plaintiffs' FAA coverage or waiver argument.

---

[2]     Plaintiffs' counsel provides the Court with only NMB's Employee Handbook. The Court will rely on Defendants' representations that NMB and CCC used the same materials, coupled with the Reply's failure to object to this exhibit, to conclude that the CCC Employee Handbook contained the same modification provision.

## DISCUSSION

### I.     Legal Standard

Under Section 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court [. . .] for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA provides that a written agreement requiring arbitration of controversies arising out of a contract "evidencing a transaction involving commerce [. . .] shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA creates a substantive rule applicable in state as well as federal courts. *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).

The FAA "was not enacted to force parties to arbitrate in the absence of an agreement." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997). Rather, Congress' concern "was to enforce private agreements into which parties had entered." *Id.*   The existence of an enforceable arbitration agreement is a threshold matter that must be established before the FAA applies. *See id.* at 1287. "The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002).

When a party denies the existence of a valid agreement to arbitrate, the Court must employ a standard of review similar to that of summary judgement. *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012). When there are no genuine issues of material fact regarding the agreement to arbitrate, the Court may decide the arbitration issues as a matter of law. *CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202, 1207–08 (D.N.M. 2020) (citing *Hancock*, 701 F.3d

at 1261); *Avedon*, 126 F.3d at 1283. Defendants, as the moving party, bear the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement. *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1190 (D.N.M. 2018) (citing *Bellman v. i3Carbon, LLC*, 563 Fed.Appx. 608, 612 (10th Cir. 2014)). Upon presenting sufficient evidence, the "burden shifts to Plaintiffs to raise a genuine dispute of material fact regarding the existence of an agreement." *Id.* The Court gives Plaintiffs, as the non-moving party, the benefit of any reasonable doubts or inferences. *Hancock*, F.3d at 1261.

The FAA does not command courts to compel arbitration when the underlying arbitration agreement is invalid or otherwise unenforceable. *See* 9 U.S.C. § 2. A party resisting arbitration may assert state law contract defenses such as fraud, duress, or unconscionability, with the caveat that state law specifically hostile to arbitration is preempted by the FAA. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019) (holding that the FAA precluded a court from applying California's *contra proferentem* doctrine to construe ambiguity in an arbitration agreement as to the availability of class arbitration against its drafter; stating "an equal treatment principle cannot save from preemption general rules that target arbitration either by name or by more subtle methods, such as by 'interfer[ing] with fundamental attributes of arbitration'"); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

## II.    A Valid Arbitration Agreement Does Not Exist in this Case

Defendants present convincing evidence of the formation of an agreement, but the Court cannot end its inquiry here. In order to compel arbitration, the Court must find that parties formed a *valid* agreement. Defendants submit that parties formed an agreement to arbitrate, valid under New Mexico law as an implied-in-fact contract. In assessing this claim, the Court applies "ordinary

state-law principles that govern the formation of contracts." *Davis*, 303 F. Supp. 3d at 1189 (citing *Bellman*, 563 Fed.Appx. at 612). Under New Mexico common law, legally enforceable contracts must be factually supported by an offer, an acceptance, consideration, and mutual assent of the parties. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 918 P.2d 7, 10 (N.M. 1996) (quoting *Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 780 (N.M. 1993)). New Mexico recognizes implied-in-fact contracts formed implicitly through the conduct of the parties. *See Orion Tech. Res., LLC v. Los Alamos Nat. Sec., LLC,* 287 P.3d 967, 971 (N.M. Ct. App. 2012) (citing *Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996)). At this juncture, many of the arguments raised by Plaintiffs are unpersuasive and the law is largely on Defendants' side.[3] There is no genuine dispute that (1) Plaintiffs were presented with the Employee Handbook containing the employment application, (2) their electronic signature acknowledges receipt these materials, and (3) their hiring was conditioned on agreeing to be bound by the arbitration provision in the employment application. However, Plaintiffs' failure to dispute certain facts or incorporate them into arguments does not entitle Defendants to a finding that a valid arbitration agreement exists in this case.

Plaintiffs assert, in relevant part[4], that the Arbitration Provision is not valid under New Mexico law because the following characteristics render the agreement unenforceable in New Mexico. First, the Arbitration Provision creates a unilateral promise to arbitrate. Second, the Arbitration Provision is subject to the Employee Handbook's Modification Provision.

---

[3]    Defendants assert that Plaintiffs attempt to raise issues of material fact though asking the Court to engage in rote speculation. The Court is inclined to agree that, absent specific evidence, it would be inappropriate to entertain certain conjecture (e.g., whether Plaintiffs would have been able to find employment elsewhere). However, the Court notes that Defendants have also asked it to engage in speculation (e.g., assuming, without specific evidence, that Plaintiff Holloway's agreement with NBD applied to CCC once she transitioned to a CCC-owned restaurant location).

[4]    The Court will not address Plaintiffs' procedural unconscionability argument because Plaintiffs do not argue facts sufficient to establish that defense.

After resolving all reasonable doubts in favor of Plaintiffs, the Court finds that the Modification Provision renders the arbitration agreement invalid under New Mexico law. Therefore, the Court concludes that the FAA does not allow Defendants to compel arbitration in this case. The Court does not base its ruling upon a determination that New Mexico law invalidates Plaintiffs' unilateral promise to arbitrate, as such a determination would go against the Tenth Circuit's conclusion that common law defenses to an arbitration demand "are preempted by the FAA if they 'derive their meaning from the fact that an agreement to arbitrate is at issue.'" *THI of New Mexico at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1169 (10th Cir. 2014) (quoting *Concepcion*, 563 U.S. at 339).

In *Patton*, the Tenth Circuit held that the FAA preempted the New Mexico Court of Appeals' determination in *Figueroa v. THI of New Mexico at Casa Arena Blanca, LLC*, 306 P.3d 480 (N.M. Ct. App. 2012), that New Mexico's unconscionability doctrine invalidated arbitration provisions that apply only, or primarily, to claims that just one party to the contract is likely to bring. 741 F.3d at 1162. This preemption holding is based on an exhaustive review of United States Supreme Court case law interpreting the FAA. *Id.* at 1165–68. The Tenth Circuit applied this case precedent to its finding that the New Mexico Court of Appeals' unconscionability determination in *Figueroa* was "based on the notion that arbitration is inferior to litigating in court." *Id*. at 1165 "The rule of *Figueroa* [is specifically hostile to arbitration agreements] because the heart of the asserted unfairness is about the disparity in what claims must be arbitrated." *Id.* at 1169.

*Patton*'s preemption holding is further supported by a robust discussion that evidences the Tenth Circuit's concern with New Mexico courts' frequent use of the state's unconscionability doctrine to invalidate arbitration agreements. *Id.* (noting that the apparent view of the New Mexico courts is "that so long as they are applying general unconscionability doctrine, the FAA does not

limit their reasons for ruling an arbitration agreement unconscionable."). The Tenth Circuit seems to be of the opinion that such unconstrained use of the unconscionability doctrine implicates the warning issued by the United States Supreme Court in *Perry v. Thomas*, 482 U.S. 483 (1987), a case which held that the FAA preempted a California statute explicitly disfavoring arbitration. The *Perry* Court declined to address whether the arbitration agreement at issue was unconscionable. Instead the Court concluded that the unconscionably issue could be considered on remand, but issued this warning to the California lower court:

> A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. A court may not. . . construe [an arbitration] agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. *Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot.*

> *Perry*, 482 U.S. at 492 n.9 (alteration and emphasis added in *Patton*, 741 F.3d at 1167).

Given the Tenth Circuit's clear disagreement with certain applications of New Mexico's unconscionability doctrine as applied to enforceable arbitration agreements, at least one court in this District has construed *Patton* to stand for the proposition that the FAA preempts the New Mexico Supreme Court's *Rivera* and *Cordova* holdings upon which Plaintiffs so heavily rely. *See SRI of New Mexico, LLC v. Hartford Fire Ins. Co.*, 2015 WL 12803774, at *7 (D.N.M. June 26, 2015) (noting that, since *Figueroa* relied on *Riviera* and *Cordova*, "the Tenth Circuit has concluded that those cases are contrary to the FAA which preempts them"); *see also Rivera v. Am. Gen. Fin. Servs., Inc.*, 259 P.3d 803 (N.M. 2011) (holding that, under New Mexico's unconscionability doctrine, an arbitration provision which permitted lender to seek judicial redress of its likeliest claims, while forcing the borrower to arbitrate all claims is invalid); *Cordova v. World Finance Corp. of N.M.*, 208 P.3d 901 (N.M. 2009) (same holding for arbitration provision

limiting a borrower to mandatory arbitration while reserving for the lender the exclusive option of access to the courts for certain remedies).  However, the Court will not analyze Defendants' preemption argument any further, as further analysis is not necessary for the Court to decide whether the FAA's preemption of the *Figueroa* rule applies to the cases relied on by Plaintiffs. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

      A.  <u>The Modification Provision allows Defendants to modify the Arbitration Provision</u>

      In New Mexico, an arbitration agreement can be incorporated into an employee handbook if the arbitration agreement is located within the handbook or on a document referencing the handbook. *See Salazar v. Citadel Commc'ns Corp.,* 90 P.3d 466 (N.M. 2004). An employer's ability to suspend or modify practices, policies, and procedures contained within an employee handbook extends to any incorporated arbitration agreement, thus rendering the agreement illusory and unenforceable. *Id.* at 471. In the instant case, the employment applications are physically attached as the last page of the Employment Handbook. Doc. 36 at 3. Even more, the clause directly below the Arbitration Provision states, in relevant part, "It is expressly understood and agreed by me. . . that nothing *contained in this handbook or any subsequent changes or modifications there to* [sic] shall act as a contract or guarantee of employment." Doc. 36, Ex. C & D. Therefore, resolving all doubt in favor of Plaintiffs, the Court finds that the employment applications are incorporated into the Employee Handbook and that the Modification Provision renders the Arbitration Provision modifiable at will by Defendants. Based on this finding by the Court, any arbitration agreement created by the provision at issue would be illusory, and consequently Defendants may not enforce such an agreement against Plaintiffs. *See Salazar*, 90

P.3d at 471 (concluding that an arbitration agreement "annexed" to an employee handbook was an unenforceable illusory promise because the employer reserved the right to modify any provision of the handbook).

B. Whether an initial offer of employment is sufficient consideration is not dispositive

Defendants contend that, even upon a finding that the Arbitration Provision is modifiable, the Court must make a further finding that the agreement fails for total lack of consideration. *See Piano v. Premier Distrib. Co.*, 107 P.3d 11, 14 (N.M. Ct. App. 2005) (absent evidence of a "bargained-for exchange between the parties," an agreement lacks consideration and is unenforceable) (quoting *Smith v. Vill. of Ruidoso*, 994 P.2d 50, 58 (N.M. Ct. App. 1999). Defendants assert that, to find that the arbitration agreement fails for lack of consideration, the Court must conclude that their performance was entirely optional.  *See James Hamilton Constr. Co.*, 891 P.2d 556, 561 ("A purported promise that actually promises nothing because it leaves the choice of performance entirely up to the offeror is illusory, and an illusory promise is not sufficient consideration for a contract."). Defendants distinguish the instant case from *Heye v. Am. Golf Corp.*, 80*,* where the purported consideration was a mutual promise to arbitrate. 80 P.3d 495, 500 (illusory promise not consideration because employer may "selectively abide by its promise to arbitrate"). In contrast, Defendants argue, CCC's and NMB's promise was to abide by an initial offer of employment, were they to make one, and performance was complete upon hiring Plaintiffs.

Whether an initial offer of employment is valid consideration is not well-settled under New Mexico law, as the New Mexico Supreme Court has yet to take a definitive position on this issue. In *Heye*, the plaintiff signed an arbitration agreement, modifiable at defendant's option, after she was hired but before she began working. The *Heye* defendant put forth the similar argument that "employment and continued employment" provided the necessary consideration. The New Mexico

Court of Appeals found it "unnecessary" to resolve this issue but determined "there is no other consideration that can support the arbitration agreement." P.3d at 500.  In *Parrish v. Valero Retail Holdings, Inc*., which also dealt with an arbitration provision contained in an employment application, U.S. District Judge James O. Browning isolated the defendant's initial offer of employment and found that it independently created consideration sufficient to support the resulting arbitration agreement. 727 F. Supp. 2d 1266, 1277–79 (D.N.M. 2010).  Judge Browning concluded that the dearth of on-point case law indicates that "[t]he Supreme Court of New Mexico. . . seems to accept that a contract for at-will employment, even an implied contract, where the consideration is the offer of employment, is valid." *Id.*; *see also Garcia*, 918 P.2d at 10 (finding that parties formed an implied contract, supported by consideration, when plaintiff accepted defendant's offer of employment, proceeded to carry out the specific tasks required of him, and was compensated accordingly). This Court agrees with Judge Browning's conclusion that conditioning the hiring of an applicant on the applicant's promise to arbitrate future disputes can provide sufficient consideration.  This conduct evidences a "bargained-for exchange" giving rise to consideration. *See Hadnot v. Bay, Ltd*., 344 F.3d 474, 477 (5th Cir. 2003). However, for the reasons stated below, the Court need not determine whether the contested arbitration agreement is supported by consideration.

C.  The Arbitration Provision is unenforceable in New Mexico

 The arbitration agreement at issue, which gives Defendants an unqualified amount of discretion, places this case in a category different from *Parrish*. 727 F.Supp. at 1270 (policy clearly disclosed list of what rules would govern and placed substantive limits on the effect of company's amendment of rules). In *Flemma v. Halliburton Energy Servs*., 303 P.3d 814 (N.M. 2013), the New Mexico Supreme Court examined an arbitration agreement nearly identical to the one at issue

in *Parrish*. Although Halliburton retained the right to amend the arbitration rules at any time, or simply terminate the plan altogether, the company had to give at least ten days notice to current employees and any amendment or termination would not affect proceedings already initiated. *Id.* at 821–22. The New Mexico Supreme Court agreed with the Court of Appeals that the parties formed a valid arbitration agreement under Texas law, but it reversed the Court of Appeals' decision to apply Texas law and enforce the agreement. *Id.* at 820.

The New Mexico Supreme Court found that Halliburton's ability to the modify the arbitration agreement rendered it unconscionable and, consequently, unenforceable in New Mexico. *Id.* at 820 ("Unconscionability is a principle born of public policy, and it is a means of invalidating an otherwise valid contract."). Specifically, the agreement was found to be substantively unconscionable in that it was unreasonably one-sided in favor of Halliburton. *Id.* at 821; *see also Cordova*, \208 P.3d at 908 (under New Mexico law, a contract may be invalidated due to substantive unconscionability even in the absence of procedural unconscionability). This unconscionability finding does not present an issue under *Patton*; it was not based on any seeming disparity between parties' methods of redress or assumption that arbitration is an inferior means of dispute resolution. *Id.* at 822 ("[T]hese terms do not distinguish the method of each party's redress, as did the agreements in *Cordova* and *Rivera*."). Rather, the New Mexico Supreme Court in *Flemma* found substantive unconscionability because Halliburton could "change the rules of the game just before it starts" since Halliburton had the ability to amend terms after a claim accrues, but before any proceeding is initiated. *Id.*; *see also Cordova*, 208 P.3d at 907 (The substantive unconscionability analysis focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, and the one-sidedness of the terms). This could easily lead to a situation in which an employee, having accrued a claim against his employer,

intends to start the dispute process only to find that the arbitration policy has been recently (and perhaps conveniently) amended to impose more restrictive and burdensome terms. *Flemma*, 303 P.3d at 822 (posing a similar hypothetical).

In accordance with New Mexico contract law and the New Mexico Supreme Court's holding in *Flemma*, the Court finds that the Arbitration Provision at issue is substantively unconscionable. This finding is supported by the fact that the provision is utterly bereft of terms. Even in the event Defendants never choose to exercise their right to modify the Arbitration Provision, the current version fails to give employees the faintest idea of what forum, what rules, or what cost-sharing methods will be used in a potential arbitration proceeding. The high degree of uncertainty generated by this agreement alone might render it unenforceable.

## CONCLUSION

**Therefore**, for the reasons explained in this Memorandum Opinion and Order, the Court finds that a valid arbitration agreement does not exist between the parties. Consequently, the FAA does not require the Court to compel arbitration of Plaintiffs' claims. Therefore, Defendants' Motion to dismiss the Complaint and compel arbitration (Doc. 36) is **DENIED**.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE