## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DONALD GUARRIELLO and
VALERIE HOLLOWAY
on behalf of themselves and all other persons
similarly situated, known and unknown,

        Plaintiffs,

v.                                    No. 1:19-cv-01184-WJ-CG

YASHNA ASNANI; CLASSIC CAFÉ
CUISINE, LLC, a New Mexico
Limited Liability Company;
BARRERAS ENTERPRISES, Inc.,
a New Mexico Corporation;
NEW MEXICO'S BEST DINER, LLC,
a New Mexico Limited Liability Company,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

THIS MATTER comes before the Court upon Plaintiffs' Motion for Conditional Certification of an FLSA Collective Action, filed October 5, 2020 (Doc. 54).[1] Having reviewed the parties' submissions and the applicable law, the Court finds that Plaintiffs' Motion is well-taken as to its allegations that Plaintiffs are similarly situated to other restaurant servers in New Mexico and is not well-taken as to its allegations that Plaintiffs are similarly situated to out of state restaurant servers. This Motion is therefore GRANTED IN PART and DENIED IN PART.

---

[1]      The parties' briefs on this motion have been refiled several times. Plaintiffs originally filed their motion for conditional certification on July 16, 2020. That motion was stricken due to its failure to comply with D.N.M.LR-Civ.10.5. *See* Docs. 44 & 53. Similarly, Defendants' original and refiled response (Docs. 50 & 55) and Plaintiffs' original and refiled reply (Docs. 51 & 57) were stricken by Court Order. *See* Doc. 63.

## Background

On December 18, 2019, Plaintiffs filed a class and collective action Complaint alleging violations of both the Fair Labor Standards Act (the "FLSA") and the New Mexico Minimum Wage Act (the "NMMWA"). Doc. 1. Defendants[2] are: one individual, Yashna Asnani; two New Mexico limited liability companies, Classic Café Cuisine, LLC ("CCC") and New Mexico's Best Diner, LLC ("NMB"); and one New Mexico corporation, Barreras Enterprises, Inc. ("Barreras, Inc."). Defendants franchise several Denny's restaurants in Santa Fe and Albuquerque, New Mexico where Plaintiffs Donald Guarriello and Valerie Holloway were employed as servers. Plaintiff Guarriello was employed from approximately 2013 through approximately July 31, 2019 as a server at Defendants' restaurants located at 3004 Cerrillos Road, Santa Fe, New Mexico 87507; 1602 Coors Road NW, Albuquerque, New Mexico 8712; 2400 San Mateo Blvd. NE, Albuquerque, New Mexico 87110; and 11261 Menaul Blvd. NE, Albuquerque, New Mexico 87112. *Id.* ¶ 35. Plaintiff Holloway was employed from approximately 2014 through approximately July 2019 as a server at Defendants' restaurants located at 1620 Towne Center Lane S.E., Albuquerque, New Mexico 87106; 2400 San Mateo Blvd. NE, Albuquerque, New Mexico 87110; and 11261 Menaul Blvd. NE, Albuquerque, New Mexico 87112. *Id.* ¶ 37.

The Complaint alleges that Plaintiffs, and others similarly situated, were unlawfully deprived of minimum and overtime wages because Defendants failed to abide by federal and state requirements protecting tipped employees. *Id.* ¶¶ 1–30.  On the FLSA counts, Plaintiffs allege that: (1) Defendants failed to provide proper notice to tip credit notice to Plaintiffs, as required by 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59(b), *Id.* ¶¶ 87–92; (2) Defendants required Plaintiffs to perform non-tipped labor, both unrelated and related to their tipped occupation, while still paying

---

[2]       On December 21, 2020, this Court granted Defendants' motion to dismiss Renu Verma, FNU Verma, and FNU Asnani from this case. Doc. 62. These three defendants have been terminated from this action.

them the tipped rate, *Id.* ¶¶ 93–98; (3) Defendants unlawfully required Plaintiffs to reimburse the restaurants for lost costs, such as broken dishes and unpaid customer bills, *Id.* ¶¶ 99–104; (5) Defendants required Plaintiffs to perform off the clock work, *Id.* ¶¶ 105–107; and, (6) Defendants paid Plaintiffs an improper overtime rate in violation to 29 U.S.C. § 207, *Id.* ¶¶ 108–113.

On April 20, 2020, Jillian Parker joined this lawsuit as an opt-in plaintiff. Doc. 30. Ms. Parker states that she worked in a Worcester, Massachusetts Denny's location that was franchised by Ms. Asnani until approximately May 2018, when the location was acquired by Denny's, Inc. corporate. Doc. 54-3 ¶¶ 3–6. Plaintiffs contemplate a nationwide FLSA collective action and request that the Court permit them to send notice to "all servers employed at any of Defendants' Denny's restaurants at any point from December 18, 2016 to present." Doc. 54 at 20–21. The Court will refer to members of Plaintiffs' proposed class as "Servers." The arguments raised by Defendants in their Response brief largely center on the geographic scope of the proposed class. Defendants contend that the proposed class is overbroad because the Complaint is limited to conduct that occurred or is occurring in New Mexico restaurants and Plaintiffs fail to properly allege that they are similarly situated to non-New Mexico Servers. Doc. 64 at 7–9. Defendants argue that the conditional certification of a New Mexico collective action would also be inappropriate due to lack of interest and the individualized nature of Mr. Guarriello's and Ms. Holloway's employment experiences.

**Legal Standard**

## I.     FLSA Wage Requirements

Under the Fair Labor Standards Act, an employee may bring a collective action on behalf of "similarly situated" employees as a remedy for violation of the FLSA. 29 U.S.C. § 216(b). The purpose of a collective action is to give "plaintiffs the advantage of lower individual costs to

vindicate rights by the pooling of resources," and to benefit the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Unlike Federal Rule of Civil Procedure 23 class actions, putative class members under the FLSA must opt-in to the class rather than opt out. *Thiessen v. General Electric Capital Corp*., 267 F.3d 1095, 1102 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002); 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). District courts have discretion to authorize a party asserting FLSA claims on behalf of others to notify putative class members that they may choose to "opt-in" to the suit. *Hoffmann-La Roche*, 493 U.S. at 169. Court-authorized notice protects against misleading communications by the parties, resolves the parties' disputes regarding the content of any notice, assures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Id.* at 170–171.

The FLSA requires employers to pay a minimum hourly wage, which is currently $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). For a "tipped employee," defined by the statute as an employee engaged in an occupation in which he or she customarily and regularly receives more than $30 per month in tips, 29 U.S.C. § 203(t), the employer must pay a wage of at least $2.13 per hour plus an additional amount based on tips received by the employee that is equal to the difference between the $2.13 cash wage and the current $7.25 minimum wage. 29 U.S.C. § 203(m). In other words, the tip-credit provision of the FLSA permits an employer to pay tipped employees a cash wage of as little as $2.13 an hour, and then use a portion of the employees' tips to make up the difference between that hourly cash wage and the federal minimum wage. *Romero v. Top-Tier Colorado LLC*,

849 F.3d 1281, 1282–83 (10th Cir. 2017) (citing 29 U.S.C. § 203(m)); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 876 (8th Cir. 2011).

As the Tenth Circuit has recognized, § 203(m)'s tip-credit provision is "not without its limits." *Romero*, 849 F.3d at 1284. First, pursuant to the "Dual Jobs" regulation, no tip-credit may be taken for periods in which a tipped employee spends a significant amount of time performing non-tip generating work. 29 C.F.R. § 531.56(e); *see also Romero v. Top-Tier Colorado LLC*, 274 F. Supp. 3d 1200, 1206 (D. Colo. 2017) (holding that a plaintiff stated a claim for relief when she alleged that a defendant took a tip credit for time spent performing unrelated duties or related duties in excess of 20% of her workweek). Second, both the FLSA and the Department of Labor's implementing regulations place a number of requirements on employers to ensure that tipped employees are adequately compensated for their work. Before an employer can take advantage of the tip-credit provision, it must inform the employee of the related statutory requirements. *See Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253, 287–88 (S.D.N.Y. 2011) (citing and discussing 29 U.S.C. § 203(m)(2)(A)). Employers must permit employees to retain all tips, except to the extent that tips are contributed to a tip pool with other tipped employees. *See* 29 U.S.C. § 203(m)(2)(A); *see also* 29 U.S.C. § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips. . . ."). Third, employers are still bound by the FLSA's overtime requirements. A tipped employee's overtime compensation must be based on one and one-half times his or her *regular rate* of pay, meaning that the overtime rate is based on the full minimum wage rather than the tip credit rate. *See* 29 U.S.C. § 207(a); 29 C.F.R. § 531.60 (stating that "a tipped employee's regular rate of pay includes the amount of the tip credit taken by the employer per hour").

## II.      Two-Stage Collective Action Certification

The relevant question under § 216(b) is whether the plaintiff is "similarly situated" to members of the proposed class, as opposed to satisfying the criteria under Rule 23 for class certification. *Theissen*, 267 F.3d at 1102 (explaining that Congress adopted the "similarly situated" standard instead of Rule 23 standards). Section 216(b) does not define "similarly situated," but this Court and many district courts in the Tenth Circuit apply the two-step (also called the "two-stage") ad hoc approach approved in *Theissen v. GE Capital Corp.* for determining whether the members of the proposed action satisfy § 216(b). *See Theissen*, 267 F.3d at 1105 ("Arguably, the [two-step] ad hoc approach is the best of the three approaches outlined because it is not tied to the Rule 23 standards."); *Valencia v. Armada Skilled Home Care of NM, LLC*, No. 18-CV-1071 KG/JFR,  2020 WL 2768977 (D.N.M. May 28, 2020) (applying the two-stage ad hoc approach to FLSA collective action certification); *Calvillo v. Bull Rogers, Inc.*, No. 16-CV-919-WJ-GBW, 267 F. Supp. 3d 1307 (D.N.M. 2017) (same); *Cf. In re Chipotle Mexican Grill, Inc.*, No. 17-CV-1028, 2017 WL 4054144, at \*2 (10th Cir. Mar. 27, 2017) ("Our ultimate holding on this issue [in *Theissen*] was limited to finding 'no error' for 'adopting the ad hoc approach'; we did not adopt this approach as mandatory within our circuit. Indeed, we noted . . . the district courts' flexibility to determine whether plaintiffs are similarly situated." (citing *Theissen*, 267 F.3d at 1102, 1105)).

Under the first stage of the ad hoc approach, prior to the completion of discovery, a court typically makes an initial "notice stage" determination of whether the plaintiffs are "similarly situated." *Theissen*, 267 F.3d at 1102–03. At this stage, a court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* (citation and quotation marks omitted); *Calvillo*, 267 F. Supp. 3d at

1312 ("The record need only be 'sufficiently developed' to allow court-facilitated notice based upon 'substantial allegations or some factual support.'"). A court must determine whether the named plaintiff and putative class members are "similarly situated" based on the allegations in the complaint, which may be supported by sworn statements. *See Landry v. Swire Oilfield Services, L.L.C.*, No. 16-CV-621-JB/LF, 252 F. Supp. 3d 1079, 1114–15 (D.N.M. 2017) ("A plaintiff need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." (citation and quotation marks omitted)); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (requiring the plaintiffs to "make a modest factual showing" of similarly situated individuals, but stating that, at this stage, a court is merely determining "whether similarly situated plaintiffs do in fact exist")). Thus, the burden at this stage is light or lenient. *Theissen*, 267 F.3d at 1103 (referring to ad hoc standard as "fairly lenient"). Conditional certification in the notice stage, however, is by no means automatic; at least some evidence beyond unsupported factual assertions must be presented. *Eagle v. Freeport-McMoran, Inc.*, No. 2:15-CV-00577-MV-SMV, 2016 WL 7494278, at *2 (D.N.M. Aug. 3, 2016) (citation and quotation marks omitted). If a court conditionally certifies the class based on the plaintiff's allegations, notice may be sent providing for the opportunity to opt-in and discovery may proceed on the merits. *Theissen*, 267 F.3d at 1102–03.

After the opt-in period has closed, a court then makes a second determination, usually prompted by a defendant's motion to decertify the class, utilizing a "stricter standard" of similarly situated. *Id.* at 1102–03. Once the parties know which individuals will be part of the class, the court may reevaluate the conditional certification "to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008). During

the second stage of analysis, "a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required" before they commenced their lawsuit. *Theissen*, 267 F.3d at 1103 (quotation marks omitted).

## Discussion

### I.       Conditional Certification of Collective Action

A.   <u>Conditional Certification is Appropriate at this Initial Notice Stage.</u>

Plaintiffs assert that Servers' claims are based on Defendants' failure to comply with applicable tip-credit provisions, which resulted in Servers being paid a sub-minimum wage and being denied properly calculated overtime wages. To supplement the allegations contained in the Complaint, Plaintiffs put forth in their Motion: Declarations by Donald Guarriello, Valerie Holloway, and Jillian Parker, Docs. 54-1, 54-2, 54-3; certain discovery responses, Doc. 54-4; a job posting, Doc. 54-5; Defendants' "Cash Register Procedures," Doc. 54-6; Plaintiff Guarriello's overtime check stubs, Doc. 54-7; and copies of Defendants' tip-credit notice forms, Doc. 54-8.

Defendants contend that Plaintiffs have not shown uniform policies that were applied in a manner that violated Servers' FLSA rights. Doc. 64 at 17. Further, Defendants argue that Plaintiffs' claims are individualized because Plaintiffs admit they had different duties, worked different shifts in different locations, and were subject to the whims of different managers. *Id*. at 17–19. Finally, Defendants assert that the lack of opt-in interest in this case renders conditional certification of a collective action inappropriate.

For purposes of the Motion, the Court's inquiry is limited to applying a lenient test to determine whether the putative plaintiffs are similarly situated—that is, the "[p]laintiff must

provide some evidence to establish a colorable basis showing the putative class members are victims of a single decision, policy or plan." *Cavillo*, 267 F. Supp. 3d at 1307. The Court may consider several factors at this stage, "including whether potential class members: (i) have the same employer; (ii) are subject to the same employer practices; (iii) suffer the same method of calculation of wages owed; and (iv) allege FLSA violations based on the same conduct[.]" *Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D. 631, 664 (D.N.M. 2015) (citation omitted). Furthermore, "some variation in the [p]laintiff's specific job duties will not destroy a similarly situated designation at this stage of the litigation." *Landry*, 252 F. Supp. 3d at 1120; *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied* 519 U.S. 987 (1996) ("Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members."). Here, the Complaint, Motion, and supporting exhibits meet the requirements for the first stage of collective action certification because they contain substantial allegations that Plaintiffs and other Servers were subject to the same illegal wage policy.

Plaintiffs Guarriello and Holloway, through their Declarations, have shown that they and other Servers (1) performed various non-tipped duties that took up significant portions of their shifts; (2) were subject to identical policies of being allowed or required to perform off the clock work; and (3) were subject to a policy of tip retention due to unpaid customer bills, breakage, and register shortages. *See* Docs. 54-1 & 54-2. These allegations are properly based on Plaintiffs' personal knowledge, generated by their observations and interactions with other Servers and supervisors. Further, Plaintiffs submit evidence that Servers are "tipped employees," regardless of the location at which they work, *see* Doc. 54-5, and that all Servers were subject to a policy of unlawful withholding of tips, Doc. 54-6. Moreover, Defendants' payroll accounts for Mr.

Guarriello strongly suggest that other Servers were subject to the same miscalculation of overtime wages. Doc. 54-7.

Defendants' arguments against the Motion largely go to the second stage of certification, which uses the "stricter" standard in determining whether the opt-in members are sufficiently similarly situated. *See Theissen*, 267 F.3d at 1103. Defendants may offer fact-based defenses, but these arguments are irrelevant to the question of collective treatment to the extent they go directly to the merits of Plaintiffs' claims. *See Calvillo*, 267 F. Supp. 3d at 1313 (rejecting defendants' attacks on the merits of the claim and rejecting defendants' attempts to insert argument about disparate factual and employment settings at the notice stage of certification). Even after considering Defendants' critiques, the Court concludes that Plaintiffs meet their modest burden of bringing substantial allegations; the declarations and evidence presented establish that these allegations go beyond unsupported allegations. Nothing more is required at this point in the litigation because at this stage the Court "does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiff's claims." *Felps v. Mewbourne Oil Co., Inc.*, 460 F. Supp. 3d 1232, 1235–36 (D.N.M. 2020). Even if Plaintiffs' claims turn out to be meritless or if all plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable a more efficient resolution of the underlying issues in the case. The lack of opt-in plaintiffs does not support denial of conditional certification. *Id.* at 1236 (The Tenth Circuit "has never adopted the requirement that plaintiffs demonstrate the existence of other employees who wish to opt into the litigation.").

B.  The Proposed Class is Overbroad, and the Court will Limit the Class to Servers in Defendants' New Mexico Restaurants.

The Court finds that Plaintiffs have not met their burden of alleging a factual basis that would support a conclusion that they are "similarly situated" to Servers working outside of New

Mexico. This precludes the Court from approving Plaintiffs' request for nationwide notice. While Plaintiffs do offer allegations that Defendants' purported illegal wage policies touch franchised restaurants in other states, these allegations do not rise to the level of "substantial" because the pleadings and proffered evidence do not present the Court with sufficient allegations that Defendants subjected non-New Mexico Servers to a single policy, decision, or plan. In other words, the Court is unable to find a "common thread" that ties the Defendants' conduct at their New Mexico Denny's locations to restaurants outside the state.

The Complaint's statement of venue alleges the "acts giving rise to the claims of Plaintiffs Guarriello and Holloway, the Collective Members, and the Class Members occurred within the District of New Mexico." Doc. 1 ¶ 32 (emphasis added). Plaintiffs' proposed Notice includes a Consent Form asking Servers to agree to the following:

> I agree to join the lawsuit *Guarriello, et al. v. Yashna Asnani, et al.* ("the Lawsuit") to pursue unpaid wages under the Fair Labor Standards Act.
> I further consent to sue as an opt-in plaintiff against any other defendants who may be liable to me under the FLSA as a result of the work I performed at Denny's in New Mexico.

Doc. 65-3 at 4 (emphasis added). These instances of New Mexico-centric language, without more, could be excused as inartful drafting, but the Court finds that this limiting language is in accord with the geographic scope of Plaintiffs' allegations. The Complaint contains no allegations regarding restaurants outside New Mexico or any conduct occurring outside of the state. None of the three corporate Defendants is alleged to have conducted out of state business, so the inclusion of out of state Servers in the class would be dependent on Defendant Asnani's activities related to non-New Mexico franchise locations. Thus, Plaintiffs view Ms. Asnani as the "common thread," and their Reply brief advances the argument that a nationwide class could be accommodated by allowing them to amend the Complaint to include additional defendants once

such defendants are discovered. Doc. 65 at 6–7 (discussing *Callaway v. DenOne LLC*, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019)). The Court would be inclined to deny a request for such an amendment given the posture of this case.

Discovery disputes in earlier stages of this litigation have also indicated that the Complaint does not support a nationwide class of Servers. In March of 2020, Defendants moved to quash Plaintiffs' subpoena requesting copies of any and all franchise agreements between Defendants and Denny's Inc. Doc. 23. U.S. Magistrate Judge Carmen E. Garza granted the motion and made an oral finding that Plaintiffs' subpoena was overbroad, and that it requested irrelevant information for franchise agreements outside New Mexico. Doc. 32; *see also* Doc. 33. The Court rejects Defendants' assertion that the law of the case doctrine precludes Plaintiffs from "re-litigating" the geographic scope of the proposed class, as this is a misstatement of how the doctrine operates. "Law of the case doctrine permits a court to decline the invitation to reconsider issues already resolved earlier in the life of a litigation." *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1240 (10th Cir. 2016). The doctrine, like its cousin collateral estoppel, "only applies where a court actually decided the issue in question." *Universal Guar. Life Ins. Co. v. Coughlin*, 481 F.3d 458, 462 (7th Cir. 2007); *see also* 18B Wright, Miller & Cooper Fed. Prac. & Proc. § 4478 (2d ed.) ("Courts often refuse to infer decision of an uncertain issue from an ambiguous opinion."). Here, the record shows Judge Garza did not actually decide the geographic scope of the Complaint, and her ruling certainly does not have the preclusive effect Defendants argue. However, Judge Garza's order and its underlying findings do support limiting this class to New Mexico, especially since Plaintiffs chose not to appeal Judge Garza's order or otherwise object to her issued findings.

The Declarations further show that the allegations in this case support only a class of New Mexico Servers. Both Mr. Guarriello and Ms. Holloway observed their fellow Servers be subject

12

to the alleged illegal wage policies and each was aware of the general work conditions and management structure in place at the restaurants operated by CCC and NMB. *See* Docs. 54-1 & 54-2. But the competency of their Declarations weakens once they begin to rely on "an educated belief" that wage practices and work conditions are similar in all of Defendants' restaurants, regardless of location or ownership structure. Doc. 54-1 ¶ 6, ¶ 28; Doc. 54-2 ¶ 6, ¶ 28. Opt-in Plaintiff Parker's Declaration contains no statements indicating that she has personal knowledge of policies or work conditions at Defendants' New Mexico restaurant locations. *See* Doc. 54-3. Ms. Parker has never worked for any of the corporate Defendants, and her allegations do not sufficiently support a finding that the Worcester, Massachusetts Denny's location was part of Defendants' alleged "single enterprise" or that she was employed by the corporate Defendants under one of the FLSA's "joint employer" scenarios. *See* 29 U.S.C. § 203(r) (stating that an "enterprise" is characterized in part by "unified operation or common control"); 29 C.F.R. § 791.2 (detailing the factors courts consider in determining joint employer status under the FLSA). Moreover, Ms. Parker's Declaration appears to conflate Ms. Asnani's alleged conduct with that of Denny's Inc. and other unnamed individuals or entities who are not parties to this lawsuit. *Compare* Docs. 54-1 ¶ 4 & 54-2 ¶ 4 (allegations that Defendants paid Mr. Guarriello and Ms. Holloway less than the federal minimum wage), *with* Doc. 54-3 ¶ 9 (allegation that Denny's paid Ms. Parker less than the federal minimum wage). Plaintiffs state that any ambiguity about Ms. Asnani's involvement with Denny's locations outside of New Mexico is due to Defendants' unilateral attempts to block discovery related to out of state business activities. However, the Court agrees with Defendants that Ms. Asnani's activities in Worcester, Massachusetts do not fit within the Complaint's allegations of liability, especially when franchisor Denny's Inc. has not been named as a defendant. *See* Doc. 1 ¶¶ 7, 8, 33–56.

Under these circumstances, the Court would have to draw dramatic inferences in order to conclude that Plaintiffs have met their burden for conditional certification of a nationwide class. The Court declines to do so.   Stated another way, Ms. Parker and other out of state Servers are not proper class members in this action because they are not similarly situated to Plaintiffs. **Accordingly, the FLSA collective action shall be limited to Servers employed at Defendants' New Mexico Denny's restaurants at any point from December 18, 2016 to present.**

## II.    Proposed Notice.[3]

Plaintiffs request that the Court approve the proposed Notice and Consent Form (the "proposed Notice") and a ninety (90) day opt-in period, and they ask that counsel be given permission to send a reminder notice halfway through the period to eligible individuals. Both the initial notice and reminder would be sent via email and U.S. Mail. Doc. 54 at 20–21. Plaintiffs further request that the proposed Notice be posted at Defendants' restaurants. *Id.* at 21. Defendants raise two objections to Plaintiffs' proposed Notice and procedures.

First, Defendants object to the proposed Notice's broad and possibly misleading use of the moniker "Denny's." As a supporting example, Defendants cite to the following language in the proposed Notice Form:

**3. Why did I get this Notice?**

You got this Notice because Defendants identified you as a server that [*sic*] worked at Denny's at any point between December 18, 2016 and the present.

Doc. 65-3; *see also* Doc. 64 at 3 n.3. Defendants contend that such language will only confuse the proposed class members into thinking that Defendants are or include Denny's, Inc. or other Denny's franchisees. The Court agrees. **The moniker "Denny's" may be used only in**

---

[3]     Plaintiffs' original proposed Notice and Consent Forms, attached to their motion, contained the names of law firms who are not counsel of record in this matter. Plaintiffs attached a corrected version of these forms to their Reply. Doc. 65-3.

conjunction with a reference to any or all of the named Defendants: CCC, NMB, Barreras, Inc., or Yashna Asnani.

Second, Defendants oppose posting the proposed Notice within CCC and NMB's premises, arguing that these postings would be unnecessary given Plaintiffs' distribution of notice via email and U.S. Mail. Doc. 64 at 19 n.11. Defendants present no specific allegations or evidence to show that they would suffer harm as a result of posting the proposed Notice within their restaurants. The Court overrules this objection because posting notice in the workplace, even if supplemental to other forms of notice, furthers the broad remedial purposes of the FLSA.

## Conclusion

Based on the foregoing, the Court concludes that Plaintiffs have made substantial allegations that they are similarly situated to Servers in Defendants' New Mexico Denny's restaurants. Therefore, the Court grants Plaintiffs' Motion for Conditional Certification and permits Plaintiffs to provide the proposed Notice to potential class members once it has been revised as set forth above. The Court hereby **orders**:

1. Plaintiffs' Motion for Conditional Certification of an FLSA Collective Action is granted.

2. The following class (the "FLSA Collective Class") is conditionally certified:

   **All Servers employed at Defendants' New Mexico Denny's restaurants at any point from December 18, 2016 to present.**

3. Within fourteen (14) days of the issuance of this Order, Defendants shall produce to Plaintiffs a computer-readable data file containing the names, addresses, email addresses, telephone numbers, and dates of employment for the FLSA Collective Class.

4. Plaintiffs shall revise its proposed Notice as set forth above and send the revised Notice and Consent Forms by first-class U.S. Mail and email to all members of the FLSA Collective Class. Potential class members shall have ninety (90) days from the mailing of the Notice and Consent Forms to return their signed Consent Forms to Plaintiffs' counsel for filing with the Court.

5. Within seven (7) days after Plaintiffs provide Defendants a copy of the revised Notice, Defendants shall post the Notice in their New Mexico Denny's restaurants in the same area where other government-required notices are posted. Defendants may remove the Notice at the end of the opt-in period.

6. Plaintiffs may send a reminder forty-five (45) days before the end of the opt-in period to any potential class members who have not yet returned the Consent Form.

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE